PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-2876, 13-2877, 13-2878
_____

UNITED STATES OF AMERICA

v.

THERESA M. THORNHILL,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court Nos. 2-02-cr-00084-001;
2-07-cr-00388-001; 2-09-cr-00154-001
District Judge: The Honorable Terrence F. McVerry

Argued March 6, 2014

Before: RENDELL, SMITH, and HARDIMAN,
*Circuit Judges*

(Filed: July 8, 2014)

1

Rebecca R. Haywood
Michael L. Ivory          [ARGUED]
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA  15219
        *Counsel for Appellee*

Elisa A. Long               [ARGUED]
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA  15222
        *Counsel for Appellant*

_____

OPINION

_____

SMITH, *Circuit Judge.*

In 1984, Congress enacted the Sentencing Reform Act, a measure which profoundly "revise[d] the old sentencing process." *Mistretta v. United States*, 488 U.S. 361, 367 (1989).  One of the reforms effected by the Act was the elimination of special parole and the establishment of a "new system of supervised release." *Gozlon-Peretz v. United States*, 498 U.S. 395, 397

2

(1991).  The "new system" was codified in 18 U.S.C. § 3583, and included a provision at subsection (g) which mandates the revocation of supervised release and the imposition of a term of imprisonment under certain enumerated circumstances.  18 U.S.C. § 3583(g).[1]

The question we consider is: once § 3583(g)'s mandatory revocation provision is triggered, what guides a district court's exercise of discretion in determining the length of the defendant's term of imprisonment?  We conclude that this exercise of discretion is guided by the sentencing factors set forth in 18 U.S.C. § 3553(a).

## I.

In 2002, Theresa Thornhill pled guilty to a single count of bank fraud in violation of 18 U.S.C. § 1344(a) in the United States District Court for the Western District of Pennsylvania.  On May 23, 2003, the District Court sentenced Thornhill to, *inter alia*, 21 months of imprisonment and a five-year term of supervised release.

---

[1] Section 3583(g) provides, in relevant part, that if the defendant engages in certain conduct involving controlled substances or firearms, that "the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3)."  18 U.S.C. § 3583(g).

3

She was also directed to make restitution in the amount of $25,521.12 (2003 Conviction).

Thornhill's five-year term of supervised release for the 2003 Conviction commenced on December 30, 2004. In a Petition on Supervised Release dated May 30, 2007 (First Petition), Thornhill's probation officer advised the District Court that: Thornhill had submitted six urine samples that tested positive for marijuana; she had failed to attend her outpatient treatment for substance abuse; she had neither reported to her probation officer nor filed the requisite reports; and she had not made any payments toward restitution.

The District Court issued a bench warrant, and Thornhill was arrested in July 2007. Thereafter, the probation officer filed a Motion to Supplement the Petition on Supervised Release (Second Petition), alleging additional violations of the conditions of her supervised release. The Second Petition charged that Thornhill had engaged in fraudulent conduct by opening four bank accounts at four different branches of National City Bank using four different Social Security numbers. It alleged that she had deposited checks drawn on closed accounts into these new accounts, and concluded that this conduct amounted to bank fraud under 18 U.S.C. § 1344(1), fraudulent use of social security numbers under 18 U.S.C. § 407(a)(7)(B), and aggravated identity theft under 18 U.S.C. § 1028A(a)(1). Exhibits attached

to the Second Petition established that National City Bank sustained a loss of $7,648.65.

On November 16, 2007, Thornhill waived her right to an indictment and pled guilty to a one-count information charging her with bank fraud in violation of 18 U.S.C. § 1344(1) (2007 Conviction). The information was based on the criminal conduct described in the Second Petition.

At her guilty plea, Thornhill's defense counsel advised the District Court that, according to the pretrial services office, Thornhill was cooperating with the conditions of her release. Specifically, counsel told the court that she was reporting to her probation officer as required and that her weekly drug screens tested negative. In addition, defense counsel noted that the supervising probation officer hoped that Thornhill could move out of the residence of a third-party custodian, and was agreeable to eliminating the electronic monitoring that had been a condition of her pre-trial release. The probation officer confirmed counsel's representations. The District Court agreed to the modifications.

On February 25, 2008, Thornhill's probation officer filed a Supplemental Petition on Supervised Release (Third Petition). This new petition alleged that Thornhill had again tested positive for marijuana on three occasions in January and February of 2008, thereby violating conditions of supervised release stemming from

her 2003 Conviction. The Third Petition also referenced Thornhill's guilty plea to the 2007 information, which established the commission of a federal crime.

On March 28, 2008, the District Court conducted both a sentencing hearing for the 2007 Conviction and a hearing on the First, Second, and Third Petitions, which alleged violations of the terms of her supervised release on the 2003 Conviction. Defense counsel offered several exhibits intended to provide insight into Thornhill's personal circumstances, including a fourteen page, single-spaced report from clinical psychologist Jolie S. Brams, Ph.D.

Dr. Brams's report was thorough. She noted that, contrary to an earlier presentence report, Thornhill had a significant history of psychiatric issues as a child. This history included hospitalizations, and noted "a complete lack of parental concern or nurturing." The report also described a history of sexual abuse at the hands of a family member which had resulted in her placement into foster care. Thornhill's marriage was similarly marked by physical and mental abuse. Dr. Brams opined that Thornhill had many of the signs and symptoms of post-traumatic stress disorder and that her "mental health difficulties impacted her ability to deal with her life in a consistently efficacious manner, cloud[ed] her judgment, and made her more vulnerable to [the] manipulations of her husband." Dr. Brams described at length the impact of the domestic violence Thornhill experienced and

characterized her extended family situation as "toxic." The report highlighted the limited resources available to help Thornhill.

According to Dr. Brams, Thornhill had some insight into her predicament, and she opined that there could be a "good prognostic outcome if the correct resources are put in place." The report concluded by stating:

> Appropriate psychiatric treatment is also crucial, and she has demonstrated a willingness to comply and recognizes her need for these services. She clearly wants to have a "normal" life, but has had little opportunity to learn how to create one. However, underneath a history of dysfunction appears to be a young woman who has the potential to change.

Defense counsel also provided the District Court with a six page, single-spaced supplemental report from Dr. Brams. The supplemental report discussed Thornhill's progress over the previous six months. Dr. Brams opined that

> Thornhill's life is as stable as it likely has ever been, and while she recognizes the support of her probation officer, attorney, and counselor, in reality it is Ms. Thornhill

7

who has generally dealt in an appropriate manner with her life, as an adult, parent, employee, and citizen. It is important for the Court to note that she has done so in the face of continuing stressors, and immense family dysfunction with purposeful threats to her emotional and physical safety by various family members.

The supplemental report advised that Thornhill was employed part time as a licensed nursing assistant. According to Dr. Brams, Thornhill was receiving counseling services and complying with her medication regime.

Thornhill's family continued to present obstacles for her, especially those created by her abusive husband. Dr. Brams noted that Thornhill was concerned about who would care for her children if she were to be incarcerated. And Thornhill expressed a belief that the progress she had made would be negated if she were to be incarcerated. Dr. Brams opined that Thornhill "has done well during the last few months," making "solid and positive recovery from many traumatic events."

Beyond her written reports, Dr. Brams testified at the hearing. She acknowledged that Thornhill had used marijuana, but noted that it was on a therapeutic basis when she had run out of her medication and when she "was under a great deal of stress." According to Dr.

8

Brams, Thornhill did not use marijuana "for recreational purposes." Thornhill's probation officer also testified about her progress following the 2007 Conviction.

After hearing the testimony, the District Court imposed sentence. Looking at a guideline range for bank fraud of eight to fourteen months of imprisonment, the Court granted a substantial downward variance based on Thornhill's diminished mental capacity and her responsibility for raising her two sons. He sentenced her to one day of imprisonment, imposed a five-year term of supervised release, and directed that she pay restitution to National City Bank.

The hearing then turned to the violations alleged in the First, Second, and Third Petitions. Thornhill admitted the allegations in the petitions, and the government encouraged the judge to impose a within-guideline sentence of twelve to eighteen months of imprisonment. Nevertheless, after revoking her supervised release on the 2003 Conviction, the District Court sentenced her to one day of imprisonment, to be served concurrently with the sentence imposed for the 2007 Conviction. Importantly, the Court imposed another three-year term of supervised release for the 2003 Conviction.

The terms of the supervised release imposed for the 2007 Conviction included a nine-month period of home detention during which Thornhill was required to

wear an electronic monitoring device. In September 2008, almost six months after being sentenced, Thornhill was the subject of yet another Petition on Supervised Release (Fourth Petition), this one alleging that she had tampered with her electronic monitoring transmitter.[2] In addition, the Fourth Petition alleged that Thornhill had again tested positive several times for marijuana.

A Supplemental Petition on Supervised Release (Fifth Petition) followed just a month later. This Petition alleged that Thornhill had failed: to attend scheduled mental health appointments; to attend scheduled visits with her probation officer; to file the reports that were required by the terms of her supervised release; and to make any payments toward restitution.

On October 28, 2008, yet another revocation hearing was conducted before the same District Judge. Thornhill admitted to using marijuana and that she had not been wearing the monitoring device as required. She also admitted to the violations set forth in the Fifth Petition. Once again, the judge found that Thornhill had violated the conditions of supervised release and revoked her supervised release on both the 2003 and the 2007 Convictions. He imposed a within-guideline term of imprisonment of nine months on each conviction, to be

---

[2] According to the Fourth Petition, police officers were at her apartment and found her ten-year-old son wearing the electronic monitoring transmitter. A246.

served concurrently, followed by a 24-month term of supervised release.

The allegations in the Fourth and Fifth Petitions did not include averments that Thornhill had engaged in additional criminal conduct. But an indictment returned by a grand jury in May 2009, alleged that from "May 2008 to in or around July 2008," Thornhill again "knowingly execute[d] and attempt[ed] to execute a scheme and artifice to defraud" another bank in violation of 18 U.S.C. § 1344. On October 9, 2009 the same District Judge who had sentenced Thornhill on her 2003 and 2007 Convictions for bank fraud, accepted Thornhill's guilty plea to the offense of bank fraud (2009 Conviction). In February of 2010, he sentenced Thornhill to a term of imprisonment of 24 months, followed by a four-year term of supervised release and payment of restitution.

Thornhill's term of supervised release on the 2003, 2007, and 2009 Convictions commenced on July 27, 2011.[3] In a Show Cause Petition (Sixth Petition) dated April 26, 2013, Thornhill's probation officer alleged that Thornhill had again violated the terms of her supervised

---

[3] It appears that Thornhill was sentenced to 24 months of imprisonment in February of 2010 and that only seventeen months passed when her supervised release commenced on July 11, 2011. The record, however, does not explain why she did not serve the entire 24 months.

11

release for each conviction. The Sixth Petition alleged that: she had committed several violations of Pennsylvania's Vehicle Code and Criminal Code; tested positive for marijuana on seven occasions;[4] failed to attend mental health treatment appointments; and neither reported to the probation office for drug testing as required nor submitted the required monthly report. In addition, the Sixth Petition averred that Thornhill had made no restitution payments on the 2007 and 2009 Convictions and owed more than $25,000 on the 2003 Conviction.

On June 4, 2013, the same District Judge who had sentenced Thornhill on her 2003, 2007, and 2009 Convictions conducted a third revocation hearing. The Court recounted in detail Thornhill's criminal history and set forth the alleged violations of the terms of her supervised release on the record. Defense counsel noted that Thornhill admitted the allegations in the Sixth Petition except for the state law violations and the averment that she had failed to report to the probation office. The probation officer noted Thornhill's psychiatric disorders and that she had been traumatized

---

[4] Section 3583(g) mandates revocation "[i]f the defendant . . . as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year." 18 U.S.C. § 3583(g)(4). Thornhill's positive tests triggered § 3583(g)'s applicability.

12

because she had witnessed her brother's murder. In the wake of this murder, the probation officer noted, Thornhill also had to cope with the murder of one of her sons and the fact that another son sustained serious injuries in a motor vehicle accident. The probation officer acknowledged that Thornhill's failure to comply with the reporting requirement occurred during this turbulent time.

The Court then heard argument, during which defense counsel noted that Thornhill's violations were Grade C violations and urged the Court not to revoke her supervised release. He emphasized the tragic nature of Thornhill's case, acknowledging that the "Court is aware of her history." Counsel went on to recount Thornhill's psychiatric disorders, her abusive childhood and marriage, and the series of tragic events involving the murders of her brother and her son, as well as the car accident involving her other son. Counsel conceded that Thornhill had tested positive for marijuana, but explained that she was self-medicating in light of her circumstances. Counsel urged that, instead of revoking her supervised release, the Court should provide her with "structure."

The Court responded to counsel by stating: "That's what we've been trying to give her . . . . She's been here, and been here, and been here. That's what the whole plan has been. [The probation officer] has worked hard to try to give her a structure."

13

The judge asked the probation officer whether supervised release should be revoked. The probation officer replied that she had tried to work with Thornhill by referring her to different programs, but that Thornhill had failed both to follow through and to comply with directives from the Court. The probation officer expressed her belief that Thornhill "needs the structured environment, such as prison." The government agreed, once again, urging the Court to impose a substantial sentence. The Assistant U.S. Attorney recommended a three-year period of imprisonment, consisting of a one-year term of imprisonment on each conviction.

The Court concluded that Thornhill had violated the conditions of her supervised release. Thornhill then addressed the Court. She referred to the unexpected trauma in her life and stated:

> I'm not asking you for anything, but if you want to put me in jail, that's fine. The only thing I'm asking is, that I've always reported, I've never not showed up for court. I've never showed you any disrespect to not report. I'm just asking – I wasn't able to be there when my brother's murderers were convicted. I'm just asking, can I be there when the person who shot my child is tried. That's all I'm asking. If you want to sent me away, that's fine, Your Honor. But I did not come out of prison to disrespect you.

14

In response to Thornhill's remarks, the District Judge stated the following:

> Whatever you've done or not done, Miss Thornhill, I personally don't feel as though you've disrespected me. The law is the law, and you've been here time and again and been asked to comply with the law, and do what the Probation Office has been attempting to help you do. And although you have personal issues, and I recognize those, to be honest, you've been a very, very difficult person to deal with whenever you're not in a controlled environment. And I don't know whether you're difficult to deal with when you're in a controlled environment, but I've had nine years of experience with you and it's been time, after time, after time.

The District Court then found that Thornhill had committed Grade C violations, including the positive drug tests for marijuana and the failure to participate in the various programs designed to address her mental health disorders and her substance abuse. The Court explained that the positive drug tests triggered the mandatory revocation provision in § 3583(g), which required a term of imprisonment. The Court acknowledged an exception to § 3583(g)'s mandatory

15

revocation.[5] He concluded, however, that this exception was not warranted in Thornhill's case in light of the unsuccessful efforts that had already been made to address her substance abuse problems. The judge revoked her supervised release on each conviction, noting that she was subject to imprisonment for not more than three years on each conviction.[6] The Court imposed a term of imprisonment of twelve months for each conviction to be served consecutively, with "no supervised release to follow, as you have proven yourself to be unmanageable in a free society environment." The District Court directed that Thornhill begin her 36-month sentence immediately.[7]

---

[5] Section 3583(d) provides that the "Court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception . . . from the rule of section 3583(g) when considering any action against a defendant who fails a drug test." 18 U.S.C. § 3583(d).

[6] In reviewing the advisory guideline for each conviction, the District Court pointed out that the advisory guideline range for the 2003 Conviction was three to nine months, five to eleven months for the 2007 Conviction, and six to twelve months for the 2009 Conviction. A399.

[7] Because he had been advised that the trial of her son's murderer was scheduled to commence in a week, the

Thornhill filed a timely notice of appeal, challenging the revocation of supervised release in each of the three criminal proceedings.[8]

## II.

Thornhill contends that the sentences the District Court imposed upon revocations were procedurally and substantively unreasonable. In particular, Thornhill asserts that the District Judge erred by failing to articulate his reasons for rejecting the recommended guideline range, and by failing to indicate if, or how, he considered the sentencing factors enumerated in 18 U.S.C. § 3553(a). In addition, Thornhill submits that the District Court failed to respond to her mitigation arguments. According to Thornhill, these errors rendered the District Court's sentences substantively unreasonable.

The government contends that Thornhill's arguments lack merit, arguing that a district court "is not required to consider the § 3553(a) factors when revocation of supervised release is governed by

judge requested the cooperation of the United States Marshal's Service while Thornhill was in local custody in the event she was subpoenaed to appear.

[8] The District Court exercised jurisdiction under 18 U.S.C. §§ 3231 and 3583(g). We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

17

§ 3583(g)." For that reason alone, the government asserts that Thornhill's claim of procedural error must fail. Nonetheless, the government submits that the District Court did consider some of the § 3553(a) sentencing factors and that the Court's revocation order is neither procedurally nor substantively unreasonable.

## III.[9]

### A.

According to the government, this court has determined that once § 3583(g) applies, the District Court is not required to consider the § 3553(a) factors in

---

[9] The question of whether the District Court is required to consider the § 3553(a) factors in imposing a term of imprisonment under § 3583(g) presents an issue of law subject to plenary review. *See United States v. Smith*, 445 F.3d 713, 716 (3d Cir. 2006) (noting, in the context of an appeal challenging a condition of supervised release, that our review is plenary to the extent it concerns a legal issue); *see also United States v. Poellnitz*, 372 F.3d 562, 570 (3d Cir. 2004) (applying plenary review to question of statutory interpretation involving § 3583(i)). We review the procedural and substantive reasonableness of a sentence imposed upon revocation of supervised release for an abuse of discretion. *United States v. Bungar*, 478 F.3d 540, 542 (3d Cir. 2007).

imposing a term of imprisonment. It relies on our decision in *United States v. Doe*, 617 F.3d 766, 772 (3d Cir. 2010). There, we noted the two types of revocation proceedings: discretionary revocation under § 3583(e)(3) and mandatory revocation under § 3583(g). *Id.* With regard to the mandatory provision, we stated that "[w]hile [mandatory revocation under] § 3583(g) does not expressly require consideration of the § 3553(a) factors, it does not prohibit the sentencing court from doing so." *Id.*

Ostensibly, this language lends some support for the government's contention that the District Court did not err because it was not required to consider the § 3553(a) factors. Yet the *Doe* language is not controlling. Because the *Doe* Court ultimately concluded that the District Court had exercised its authority under § 3583(e)'s discretionary revocation provision, the statement relied upon by the government is dictum. Furthermore, the Court's "observation" that § 3583(g) does not explicitly refer to the § 3553(a) factors does not amount to a holding that these factors have no role to play in a mandatory revocation proceeding.[10] Accordingly, we are left to decide whether the § 3553(a) factors must be considered by a district judge in deciding

---

[10] Indeed, the government tacitly acknowledges as much. In its Rule 28(j) letter, the government characterized this quotation from *Doe* merely as an "observation."

19

the length of a term of imprisonment following mandatory revocation under § 3583(g).

## B.

In the absence of binding authority, we must determine whether the statute provides specific guidance to a district judge when exercising his/her discretion in choosing an appropriate term of imprisonment following mandatory revocation of supervised release. "Statutory interpretation requires that we begin with a careful reading of the text." *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 177 (3d Cir. 2013). *See also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) ("As in all statutory construction cases, we begin with the language of the statute.").

Our inquiry is not confined solely to the text of § 3583(g). Rather, "[i]n matters of statutory interpretation, the 'plain meaning' of statutory language is often illuminated by considering not only 'the particular statutory language' at issue, but also the structure of the section in which the key language is found, [and] 'the design of the statute as a whole and its object.'" *United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006) (quoting *United States v. Schneider*, 14 F.3d 876, 879 (3d Cir. 1994)). Our analysis, therefore, is informed not only by the text and structure of § 3583 in its entirety, but also the text and structure of the Sentencing Reform Act, §§ 3551-3586, which established the sentencing regime.

20

Section 3583 pertains to supervised release. 18 U.S.C. § 3583. This section establishes that supervised release may be imposed initially as a component of a sentence. *Id.* § 3583(a). In addition, once imposed, supervised release may be terminated, extended, or revoked. *Id.* § 3583(e)(1), (2), and (3). If supervised release is revoked and a term of imprisonment is imposed, that imprisonment may be followed by another term of supervised release. *Id.* § 3583(h).

Revocation of supervised release takes two forms: discretionary under § 3583(e) and mandatory under § 3583(g). *Doe*, 617 F.3d at 772. Section 3583(e) establishes a three-step process for discretionary revocation: (1) a finding by the court that the defendant violated a condition of supervised release; (2) a decision by the court to revoke the defendant's term of supervised release; and (3) following revocation, the imposition of a penalty.[11] Significantly, subsection (e) directs that the

---

[11] 18 U.S.C. § 3583(e)(3) ("The court may, after considering [certain] factors set forth in § 3553(a) . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release. . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release").

21

court's decision to revoke at step two must be made "after considering" certain factors set forth in § 3553(a). 18 U.S.C. § 3583(e).

Section 3583(g) pertains to mandatory revocation. The process set out in this subsection is similar to that of § 3583(e) but eliminates step (2) and makes no reference to § 3553(a). Thus, this subsection entails only two steps: (1) a finding by the court that one of the four circumstances in § 3583(g)(1)–(4) occurred; and (2) if so, revocation is automatic and the court must impose a "term of imprisonment" as a penalty.

This two-step process makes clear why Congress referred in § 3583(e) to the § 3553(a) sentencing factors, and why it did not need to mention § 3553(a) in the mandatory revocation provision in § 3583(g). Congress explicitly tied consideration of the § 3553(a) factors in § 3583(e) to the exercise of discretion by a district court in deciding whether to "(1) terminate a term of supervised release[,] . . .(2) extend a term of supervised release[,] . . . (3) revoke a term of supervised release[,] . . . or (4) order the defendant to remain at his place of residence." 18 U.S.C. § 3583(e). The mandatory revocation provision, however, affords the district court no discretion in making a decision about revocation. Once § 3583(g) is triggered, the revocation is automatic. There was no need, therefore, for Congress to instruct that the § 3553(a) factors should be considered prior to

22

making a decision about mandatory revocation under § 3583(g).

Moreover, there was no need to refer to § 3553(a) in enacting this provision on mandatory revocation. The text of § 3583(g) specifies that when any of the enumerated circumstances exist, revocation is mandated and a district court "shall . . . require the defendant to serve a term of imprisonment." The penalty dictated by § 3583(g)–"a term of imprisonment"–is not unique to revocation of supervised release under § 3583(g). It is, rather, a common component of most sentences that may be imposed following a defendant's conviction. *See* 18 U.S.C. § 3582 (governing the imposition or modification of a term of imprisonment); *United States v. Goodson*, 544 F.3d 529, 537 (3d Cir. 2008) (listing the penalties that may be a component of a sentence). Section § 3582 itself provides that a "court, in determining whether to impose a term of imprisonment, and . . . *in determining the length of the term*, shall consider the factors set forth in section 3553(a) to the extent they are applicable[.]" *Id.* § 3582(a) (emphasis added). Thus, the usage of the statutory phrase "term of imprisonment" in § 3583(g) incorporates both § 3582 and its directive to consider the § 3553(a) sentencing factors.

Section 3553(a)'s applicability to mandatory revocation proceedings fits neatly within the sentencing regime established by the Sentencing Reform Act. Section 3553(a) provides that "in determining the

23

particular sentence to be imposed, [a court] shall consider" seven enumerated factors. 18 U.S.C. § 3553(a)(1)–(7). Each of the statutory provisions pertaining to the various components of a sentence also directs that the § 3553(a) factors should be considered. *See* 18 U.S.C. § 3562 (directing that the court, "in determining whether to impose a term of probation, and . . . the length . . . and conditions of probation, shall consider the factors set forth in section 3553(a)); § 3572 (the court, "[i]n determining whether to impose a fine . . . shall consider," *inter alia*, the § 3553(a) factors); § 3583(c) (inclusion of supervised release as a part of a sentence requires consideration of certain § 3553(a) factors). Indeed, consideration of the § 3553(a) factors is not limited to determining the type of penalty and the attributes of that penalty. Section 3553(a) also applies when a court decides whether multiple sentences are to run concurrently or consecutively. 18 U.S.C. § 3584(b).

Nothing in the language of § 3553(a) limits its application to a revocation proceeding under § 3583(g). Nor does § 3582(a) include language concerning the factors to be considered in determining the length of a term of imprisonment that renders § 3553(a) inapplicable to a mandatory revocation proceeding. And the mandatory revocation provision itself does not prohibit consideration of the § 3553(a) factors in setting the length of the term of imprisonment required by the statute. 18 U.S.C. § 3583(g); *Doe*, 617 F.3d at 772.

24

Accordingly, we hold that the text and structure of § 3583 and the Sentencing Reform Act require a district court to consider the sentencing factors in § 3553(a) in determining the duration of the term of imprisonment imposed under the mandatory revocation provision in § 3583(g).[12]

Our holding should not be unexpected. It is consistent with this court's jurisprudence concluding that the § 3553(a) factors are relevant in revocation proceedings. In *United States v. Clark*, 726 F.3d 496 (3d Cir. 2013), we considered whether a district court that had revoked supervised release under § 3583(e)(3) had erred by imposing both a "term of imprisonment" and a term of supervised release without conducting separate § 3553(a) analyses for each penalty. We concluded that a single § 3553(a) analysis was sufficient. In reaching this conclusion, we recognized that, in a revocation proceeding, § 3583(h) permits a district court to impose a term of supervised release to follow any term of imprisonment. Although § 3583(h) does not reference the § 3553(a) sentencing factors, we held that the sentencing factors are to be considered in imposing an additional term of supervised release because they are "listed in 18 U.S.C. § 3583(c), the provision governing

---

[12] We limit our holding to the factors that must be considered when imposing a term of imprisonment following mandatory revocation under § 3583(g).

25

the imposition of the initial term of supervised release." *Id.* at 501. *See also United States v. Santiago-Rivera*, 594 F.3d 82, 84 (1st Cir. 2010) (reasoning that even though § 3583(h) "does not list the [§ 3553(a)] factors to be considered in imposing a term of supervised release as a part of a revocation sentence, it is a reasonable inference that the factors are the same as those to be considered in imposing an initial term of supervised release"); *United States v. Bungar*, 478 F.3d 540, 542-43 (3d Cir. 2007) (concluding, without objection, that our review of an appeal of a mandatory revocation order is "for reasonableness" and that "to be reasonable the record must demonstrate the sentencing court gave meaningful consideration to the § 3553(a) factors").

Finally, our holding is consistent with the overall sentencing scheme of the Sentencing Reform Act, which repeatedly tethers the exercise of discretion by a sentencing judge to the factors set out in § 3553(a). It would be odd indeed for Congress, after specifying that the § 3553(a) factors must inform a district court's exercise of discretion in imposing each component of a sentence, *see* §§ 3553(a), 3562(a), 3572(a), 3582(a), 3583(c), to then give a district court carte blanche in imposing a term of imprisonment following mandatory revocation of supervised release under § 3583(g). *See Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 375 (3d Cir. 2012) (observing that the principles of statutory

interpretations instruct that courts should "avoid constructions that produce odd or absurd results").

## IV.

## A.

Having concluded that the District Court was obliged to consider the § 3553(a) factors in deciding the length of the term of imprisonment to impose following revocation under § 3583(g), we turn to Thornhill's assertion that the District Court erred procedurally. In *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006), we established a "three-step sentencing process." After calculating the guideline sentence and formally ruling on any motions of the parties, a sentencing court must then exercise its discretion by considering the relevant § 3553(a) factors in determining an appropriate sentence. Thornhill contends that the District Court erred at the third step of this process by failing to: (1) give rational and meaningful consideration to the relevant § 3553(a) factors; (2) adequately explain the sentence, including an explanation for any deviation from the guidelines; and (3) respond to defense counsel's colorable arguments for mitigation. The burden is on Thornhill to demonstrate that the District Court's sentence is unreasonable. *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007).

27

We review for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). In *Tomko*, we emphasized that "it is essential that district courts make an 'individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). We instructed that "it is equally important that district courts provide courts of appeals with an explanation 'sufficient for us to see that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a).'" *Id.* (quoting *United States v. Levinson*, 543 F.3d 190, 196 (3d Cir. 2008)).

"Meaningful consideration" of the § 3553(a) factors is also required in revocation proceedings. In *Bungar*, we declared that in order for the penalty imposed upon revocation of supervised release "to be reasonable the record must demonstrate that the sentencing court gave 'meaningful consideration'" to the § 3553(a) factors. 478 F.3d at 543. This does not mean that the sentencing court is required to "'discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing.'" *Id.* (quoting *Cooper*, 437 F.3d at 329).

The Supreme Court has instructed that the "sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United*

28

*States*, 551 U.S. 338, 356 (2007).  And it is, of course, the sentencing judge who "has access to, and greater familiarity with, the individual case and the individual defendant before him than the . . . appeals court."  *Id.* at 357-58.  "Because of the 'fact-bound nature of each sentencing decision,' there is no 'uniform threshold' for determining whether a court has supplied a sufficient explanation for its sentence."  *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010) (quoting *Tomko*, 562 F.3d at 567).  In some cases a brief statement will suffice, while in others a longer explanation may be necessary.  *Id.*  *See also Rita*, 551 U.S. at 358 (concluding that sentencing court's statement of reasons was "brief", but "legally sufficient").  What a court may not do, however, is ignore a colorable argument raised by a party if it concerns the applicability of one the § 3553(a) factors.  *Id.*

When a district judge departs from the guideline range, he must "explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."  *Gall*, 552 U.S. at 46.  Yet we are mindful that "'extraordinary' circumstances" are not required "to justify a sentence outside the Guidelines range."  *Id.* at 47.  We will not regard a sentence as unreasonable simply because we, as an appellate panel, might conclude that a different sentence would have been appropriate. *Id.* at 51. Rather, we must take into account the "extent of the deviation,"

and "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

**B.**

The parties' arguments during the revocation proceeding are clear from the record – just as they no doubt were to the District Judge. The defense urged him, despite § 3583(g)'s applicability, not to revoke Thornhill's supervised release and not to impose a term of imprisonment. The government argued that the Court could not expect any change from Thornhill and it asked the Court to impose a three year term of imprisonment consisting of a one year term on each conviction, to run consecutively. In other words, the parties were at polar extremes: the defense urged the court to ignore the mandates of § 3583(g) while the government advocated a sentence of three years.

The record confirms that the able District Judge listened to and understood these arguments. Thornhill's argument was contrary to the dictates of § 3583(g), and the District Court recognized this. He explained that § 3583(g) required revocation because Thornhill had tested positive for marijuana on more than three occasions in one year. Although the defense did not explicitly advance the applicability of the exception in § 3583(d) that permits relaxing the mandate of imprisonment under § 3583(g), the Court on its own

30

addressed the exception. That exception was not justified, the Court explained, based on Thornhill's failure to attend her current substance abuse and mental health programs, as well as her inability to remain drug free. In short, imprisonment was a certainty because of § 3583(g)'s applicability.

Thornhill argued for mitigation. Her problems, she claimed, were attributable to her having witnessed her brother's murder, and dealing with the emotional trauma resulting from both the murder of one of her sons and the serious injuries of another. These circumstances were fully considered by the District Court. The judge listened attentively to Thornhill's allocution. Thornhill explained that she "did not come out of prison to disrespect" the Court, but "[t]he unexpected trauma . . . was something that happened in my life." The District Judge directly responded to Thornhill, telling her that he "personally" did not "feel as though you've disrespected me." He then acknowledged the "personal issues" Thornhill had described and explained to her that the "law is the law." In addition, at the conclusion of the proceeding the Court requested the United States Marshal's Office to keep Thornhill in custody locally in the event that she were subpoenaed to appear in the trial of her son's murderer. Contrary to Thornhill's argument, we conclude that the District Court fully considered and responded to defense counsel's colorable arguments for mitigation.

31

The record demonstrates that the District Court also meaningfully considered the relevant § 3553(a) factors. Consistent with § 3553(a)(1), the Court fully considered the nature and circumstances of the violations, together with Thornhill's history and characteristics. At the beginning of the hearing, the Court reviewed its almost-ten-year involvement with Thornhill's criminal cases since 2003. He noted her three convictions for bank fraud and the previous revocation proceedings. He pointed out the substantial variance he had granted on the 2007 Conviction and the first revocation proceeding, resulting in a sentence to one day of imprisonment and an additional period of supervised release. As noted above, the Court knew of the personal difficulties Thornhill faced while on supervised release. After hearing arguments from the parties, the Court stated that it was "aware of" Thornhill's history and had "considered the extensive files in these cases, the presentence reports and addenda regarding the initial sentencings, and the Court's previous revocation . . . as well as [her] responses to the allegations of the petition and the government's evidence." The Court then rendered its findings concerning the violations set forth in the Sixth Petition. Our review of the record compels our conclusion that the Court's consideration of § 3553(a)(1) was more than adequate. To conclude otherwise would be to ignore the District Judge's statement that "I've had nine years of

32

experience with you, and it's been time, after time, after time."

Section § 3553(a)(2) directs a sentencing court to consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law," "to provide just punishment," to deter further criminal conduct, "to protect the public" and to provide correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A), (B), (C), and (D). Thornhill's recidivism, and the applicability of § 3583(g) requiring the imposition of a term of imprisonment, brought these § 3553 considerations to the forefront of this revocation hearing. We are well-satisfied that the Court took these factors into account.

The Court's dialogue with defense counsel is telling. Defense counsel argued that the Court did not have to find a violation and that Thornhill just "need[ed] structure." The Court replied: "That's what we've been trying to give her . . . She's been here, and been here, and been here. . . . So how else are we going to accomplish that, without forcing her into a situation." This exchange clearly reveals the Court's conclusion that mere supervision had been ineffective in curbing Thornhill's substance abuse, deterring her criminal conduct, or compelling her compliance with a regimen of mental health treatment. In short, incapacitation and deterrence had become necessary.

33

The District Court then asked the probation officer for her view. She expressed her belief that Thornhill "would not be compliant" with any program offered outside a "lock-down facility." She noted that, despite her attempts to work with Thornhill, "[e]very step of the way . . . she fail[ed] to comply with any directive." The probation officer agreed that Thornhill "needs the structured environment . . . [of] prison." Thereafter, the Court again signaled the need for incapacitation, stating that Thornhill was unmanageable when she was not in a controlled environment and that she was "unmanageable in a free society environment."

As required by § 3553(a)(3) and (4), the District Judge addressed the kinds of sentences available and the applicable ranges of sentence for the violations with respect to each of the convictions.[13] He also addressed

---

[13] Section 3553(a)(5) was not applicable to this revocation proceeding. Section § 3553(a)(6) was not relevant because there was no need to avoid unwarranted sentence disparities in this revocation proceeding. Section 3553(a)(7) requires consideration of the "need to provide restitution to any victims of the offense." Because Thornhill's failure to pay restitution was a violation alleged in the Sixth Petition, this sentencing factor was manifestly relevant. The Court appropriately addressed this factor, making a finding that Thornhill had not paid any restitution since June 13, 2011. Thornhill's

the grade of the various violations, pointed out that the maximum term of imprisonment on each conviction was 36 months, and noted the increasing guideline range for each conviction in light of the expanded criminal history category on the latter two convictions. And he noted the advisory nature of the sentencing ranges. This discussion was sufficient to demonstrate consideration of § 3553(a)(3) and (4).[14] We therefore reject Thornhill's contention that the District Court failed to adequately consider the § 3553(a) factors.

---

dire financial condition, however, obviated the need to further address this factor.

[14] Section 3553(a)(4)(B) directs a sentencing court to consider the applicable policy statements. The commentary to United States Sentencing Guideline (U.S.S.G.) § 7B1.4 provides that "[w]here the original sentence was the result of a downward departure . . . that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted." U.S.S.G. § 7B1.4, applic. note 4 (2012). Although the District Court did not specifically refer to this policy statement, it is nonetheless informative because of the substantial downward variance Thornhill received on the 2007 Conviction. This variance was an aspect of Thornhill's history, and the Court made specific reference to it.

Thornhill maintains that the Court failed to adequately explain the sentence that it ultimately decided upon. We acknowledge that the sentencing judge "might have said more." *Rita*, 551 U.S. at 359. *Rita* instructs, however, that "context and record" are important in determining whether the "sentencing judge considered the evidence and arguments." *Id.* We conclude that the record and context make clear that the District Court fully considered all of the evidence and the arguments of the parties. For that reason, we are hard-pressed to find that the District Court's order was procedurally unreasonable or that it constituted an abuse of discretion. At the time of this revocation proceeding, the judge had nearly a decade of experience with Thornhill. He had demonstrated leniency in his efforts to help her. After advising the parties that he was fully aware of Thornhill's history and her characteristics and that he had reviewed her extensive files, the District Judge emphasized the need for structure in the sentence he must impose. Thornhill's violations were not a breach of trust on a single conviction. The Court was fully aware that it was imposing three separate penalties on three separate convictions. His words adequately conveyed that a lengthy term of imprisonment was called for under § 3583(g) because his more lenient exercises of discretion had neither deterred Thornhill from criminal conduct nor adequately conveyed to her the serious nature of her circumstances.

36

In sum, we conclude that the District Court's order revoking Thornhill's terms of supervised release and imposing three separate penalties was not procedurally unreasonable.

## C.

Thornhill also challenges the substantive reasonableness of her sentence. In her view, the District Court's procedural errors rendered her sentence substantively unreasonable. Because we have concluded that the District Court did not err procedurally, we conclude that there is no merit to her substantive challenge. *See Tomko*, 562 F.3d at 568 (instructing that "if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on the particular defendant for the reasons the district court provided").

## IV.

In sum, we are mindful of the Supreme Court's observation in *Rita* that "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." 551 U.S. at 357-58. That is especially so in this case, where the District Court had followed closely over time Thornhill's repeated violations of her supervised release. Given the District Judge's experience with Thornhill and what we consider

37

to have been his measured treatment of her violations, we conclude that the sentences should not be disturbed.

We will affirm.

*UNITED STATES v. THORNHILL*

Nos. 13-2876; 13-2877; 13-2878

---

**RENDELL,** <u>Circuit Judge</u>, Concurring in part and Dissenting in part:

I agree with my colleagues that the District Court was required to consider the factors set forth in 18 U.S.C. § 3553(a) in sentencing Ms. Thornhill, and I readily join their eloquent and well-reasoned opinion on that issue.

I part ways with the majority's disposition, however, because I would remand so that the District Court can meaningfully consider those sentencing factors in connection with the mandatory imprisonment of Ms. Thornhill upon revocation of her supervised release. The length of her term of imprisonment is squarely at issue, and the § 3553(a) factors should be weighed. This is especially true because the District Court varied upward in giving Ms. Thornhill a sentence of three years.

Until today, we have never addressed whether the § 3553(a) sentencing factors must be considered in the context of mandatory revocation of supervised release, under § 3583(g), and, indeed, few other Courts of Appeals have discussed this issue at length. If anything, as the Government points out, our case law previously hinted that consideration of the factors was appropriate, but not required, in this context. *See United States v. Doe*, 617 F.3d 766, 772 (3d Cir. 2010). However, today we clearly hold for the first time that

such consideration is mandatory. The majority finds that the District Court anticipated this holding and meaningfully considered the sentencing factors under § 3553(a).

In the usual case, we might debate whether the scattered statements of a district court resemble a discussion of the pertinent sentencing factors. However, here, the District Court had no inkling that an analysis of the § 3553(a) factors was required, and as a consequence, never mentioned the factors once.[1] This was through no fault of the District Court, conducted as it was by a "judge [and] not a prophet," lacking any reason to anticipate the requirement we set out today. *See United States v. Brown*, 595 F.3d 498, 527 (3d Cir. 2010). But fairness dictates that when we announce a new rule that could impact the length of the sentence imposed a remand for resentencing is appropriate. *See id.* (remanding for resentencing where a district court, "[l]acking . . . clairvoyance," failed to anticipate requirement to consider § 3553(a) factors post-*Booker*); *United States v. Manzella*, 475 F.3d 152, 162 (3d Cir. 2007) (remanding for resentencing upon holding that prison sentences could not be imposed for rehabilitative purposes).

We need only review the record briefly to determine that the District Court did not, in fact, foresee our holding and meaningfully consider the § 3553(a) factors. The District Court provided no explanation for its three-year, above-guidelines sentence, beyond the bare statement that Ms. Thornhill had "proven [her]self to be unmanageable in a free

---

[1] "§ 3553(a)" appears only once in the transcript, in Ms. Thornhill's objection at the conclusion of sentencing. (App. 402.)

2

society environment." (App. 400.)[2] A defendant's "manageability," whatever that might mean, is not included among the sentencing considerations listed under § 3553(a). Thus, the sole explanation provided by the District Court does not show rational and meaningful consideration of the § 3553(a) factors.[3] This alone necessitates a remand for resentencing.

Likewise, the District Court's other asides and statements in the sentencing hearing do not reveal why Ms. Thornhill was sentenced to three years' imprisonment, let alone indicate that the sentence was based on the § 3553(a)

---

[2] Though this was the sole explanation provided upon the imposition of sentence, the majority makes only a passing reference to it, noting that the comment "signaled the need for incapacitation . . . ." (Majority Op. at 34.) The remainder of the statements cited by the majority were made at different points in the hearing, some during testimony, others during argument, and all well before sentence was imposed, such that there is no indication which, if any of them, factored into the District Court's decision to sentence Ms. Thornhill above the guidelines.

[3] *Rita v. United States*, 551 U.S. 338, 359 (2007), cited by the majority for the proposition that the "context and the record" can support the sentence here, is inapposite. That case concerned a within-guidelines sentence, and the Supreme Court found that a specific explanation was not required in such a "conceptually simple" case. *Id.* at 359. By contrast, the Court noted, "[w]here the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." *Id.* at 357. The sentence here was above the guidelines, and no explanation was given.

3

factors. For example, the Court's most detailed comment was, in full, as follows:

> The Court: That's what we've been trying to give her [defense counsel]. She's been here, and been here, and been here. That's what the whole plan has been. [The probation officer] has worked hard to try to give her a structure, and give her psychiatric treatment, the mental health treatment, the drug counseling. I mean, that's what we have been doing. So, how else are we going to accomplish that, without forcing her into a situation where she has to do what she has to do?

(App. 384.) The majority cites part of this remark as evidence of the Court's consideration of § 3553(a)(2), involving incapacitation and deterrence. (Majority Op. at 33.) But far from addressing any of the sentencing factors, the Court was asking how else it was going to give Ms. Thornhill "a structure, and give her psychiatric treatment, the mental health treatment, the drug counseling," except through prison time. (App. 384.) Thus, we cannot know if the Court may have impermissibly lengthened Ms. Thornhill's prison term to promote rehabilitation.[4] I find that this comment does not represent meaningful consideration of a sentencing factor, but

---

[4] That is, the District Court potentially violated the holding of *Tapia v. United States*, 131 S. Ct. 2382, 2393 (2011): "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Several Courts of Appeals have found this holding to extend to sentences imposed upon revocation of supervised release. *See, e.g., United States v. Molignaro*, 649 F.3d 1, 5 (1st Cir. 2011).

4

rather evidences a troubling ambiguity that should be cleared up by a remand for resentencing.

More generally, where a defendant is sentenced without the slightest indication that the § 3553(a) factors were considered, our case law dictates a remand. In *United States v. Clark*, cited by the majority, we held that consideration of the § 3553(a) factors had been inadequate for a within-guidelines sentence, even though the district court acknowledged that it had to consider them and even provided a "full discussion of the first relevant factor." 726 F.3d 496, 503 (3d Cir. 2013). We held the subsequent "rote recitation of the relevant factors . . . cannot support a conclusion that the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a). Nor can we determine, from the record before us, that the court reasonably applied those factors to the circumstance of the case." *Id.* (citations omitted). Accordingly, we remanded for resentencing.

Unlike *Clark*, the term of imprisonment in this case is above the guidelines range. And unlike *Clark*, the District Court here did not discuss *any* of the sentencing factors, or even list them in a rote manner. *See also United States v. Goff*, 501 F.3d 250, 256 (3d Cir. 2007) (remanding for resentencing where, *inter alia*, "the District Court did not mention § 3553(a) when it imposed its sentence, or the necessity of applying the § 3553(a) factors under our case law"). Nor did the Court ever refer to the substance of the factors, such as: the need to provide just punishment, adequate deterrence and protection of the public, as well as the need to avoid unwarranted sentencing disparities. In sum, the record provides no basis to conclude that the District

5

Court anticipated our decision today and meaningfully considered the § 3553(a) factors. Indeed, it would be surprising if the record revealed otherwise.

We simply cannot know how meaningful consideration of the § 3553(a) factors, which we now require, would have affected Ms. Thornhill's sentence. Speculation on our part as to what the Court might have been considering, and whether those reasons coincide with § 3553(a), cannot be enough to uphold Ms. Thornhill's above-guidelines sentence. In short, Ms. Thornhill deserves to have the rule announced today applied to her case. I respectfully dissent from the majority's disposition.