NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2015
Decided March 11, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-2456

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-CR-262 |
| AGUSTIN RODRIGUEZ-SÁNCHEZ, *Defendant-Appellant*. | C.N. Clevert, Jr., *Judge*. |

**O R D E R**

Agustin Rodriguez-Sánchez, a Mexican citizen, pleaded guilty to unlawfully possessing a firearm as an illegal alien, 18 U.S.C. § 922(g)(5)(A). He was sentenced to time served plus three years' supervised release. After he committed three Grade C violations, however, the district court revoked his supervised release and imposed an above-guidelines sentence of 18 months' imprisonment. *See* 18 U.S.C. § 3583(e)(3). Rodriguez-Sánchez appeals, arguing that the court did not adequately explain its reason for sentencing him above the guidelines. Because the court's explanation was sufficient, we affirm.

Milwaukee police learned from a confidential informant that Rodriguez-Sánchez, an illegal immigrant, kept a sawed-off shotgun at his home. After obtaining a state search warrant, the police recovered a 12-gauge shotgun and a box of cartridges. Rodriguez-Sánchez was charged with possessing a firearm as an illegal alien, 18 U.S.C. § 922(g)(5)(A), and possessing a firearm that was not registered to him, 26 U.S.C. § 5861(d).

By the time Rodriguez-Sánchez was arrested for those offenses in November 2010, the Department of Homeland Security already had discovered his illegal status (through an earlier arrest) and had scheduled a court date for removal proceedings. So the government and Rodriguez-Sánchez negotiated a plea agreement designed to expedite his removal from the United States. The parties asked to proceed without a presentence investigation report. Rodriguez-Sánchez agreed to plead guilty to the § 922(g) charge and to be removed from the country following removal proceedings. In exchange the government agreed to dismiss the registration charge. The parties further agreed to ask the court to impose a sentence of time served (about 6 months)—well below his guidelines range of 21 to 27 months—followed by 3 years' supervised release. The district court accepted Rodriguez-Sánchez's plea and the parties' sentencing recommendation and sentenced him to time served.

But Rodriguez-Sánchez did not leave the country as expected. Following sentencing in June 2011, Rodriguez-Sánchez immediately began serving his term of supervised release but promptly was turned over to the custody of the U.S. Immigration and Customs Enforcement. For reasons unknown to the parties (and otherwise unreflected in the record), ICE allowed Rodriguez-Sánchez to post bond a couple months later. A probation officer conducted an unscheduled home visit in November 2012, and could not locate Rodriguez-Sánchez. The officer told Rodriguez-Sánchez's father, at whose house he resided, to tell his son to report to the probation office the next day. Rodriguez-Sánchez did not do so, making that missed appointment his fourth.

Rodriguez-Sánchez's whereabouts went unknown for the next year and a half, until he was arrested in Grand Forks, North Dakota, in April 2014. After the arrest, Rodriguez-Sánchez was transferred to the Eastern District of Wisconsin, where he faced charges for three Grade C violations of his supervised release: failing to report (four times) to the probation office and absconding; twice failing to submit monthly supervision reports; and a citation for marijuana possession.

At his supervised release revocation hearing, the government and Rodriguez-Sánchez disputed whether the district judge should impose a prison sentence within or

above the guidelines recommendation. The guidelines recommended a term of 4 to 10 months imprisonment based on Rodriguez-Sánchez's Grace C violations and criminal history category II. *See* U.S.S.G. § 7B1.4(a). The government asked for the 2-year statutory maximum sentence, highlighting an ongoing pattern of involvement with firearms (he had a prior firearms offense and was involved in a shooting while on supervised release), the need to deter him from committing future crimes because he continues to engage in criminal conduct, and the seriousness of his flight from authorities. The government pointed to U.S.S.G. § 7B1.4 application note 4, which suggests that an above-guidelines sentence may be warranted in resentencing a defendant like Rodriguez-Sánchez who initially received a downward variance. Rodriguez-Sánchez's lawyer, in seeking a within-guidelines sentence, characterized the defendant's behavior while on supervised release as insubstantial, noting that he had not engaged in any serious criminal activity and that avoiding removal a second time was unlikely.

The district court rejected both parties' sentencing recommendations and sentenced Rodriguez-Sánchez to 18 months' imprisonment, an above-guidelines sentence that still was below the statutory maximum. The judge characterized Rodriguez-Sánchez's initial sentence of time served as a "cream puff" sentence, and stressed that he "got an incredible, almost unbelievable break, and in the wake of that break it is difficult to follow a suggestion that [the defendant] be handled with kid gloves." And despite the court's expectation that the original sentence would facilitate the defendant's swift removal from this country, Rodriguez-Sánchez not only stayed but absconded. Lastly, the judge recounted Rodriguez-Sánchez's history involving violence, weapons, and drugs, the need to protect the public, and duty to deter others from committing similar violations.

On appeal Rodriguez-Sánchez argues that the district court did not sufficiently explain why it sentenced him eight months beyond the high end of the guidelines range. The sentence, in his view, was imposed only to compensate for the lenient sentence (merely time served) set at his initial sentencing, instead of being based on the factors set forth in 18 U.S.C. § 3553(a). Considering each of the § 3553(a) factors, Rodriguez-Sánchez insists, is "something the district court did not do."

But the court said enough. As required by 18 U.S.C. § 3583(e), the district court discussed several of the § 3553(a) factors. *See United States v. Carter*, 408 F.3d 852, 854 (7th Cir. 2005). We have repeatedly stated that the court need not discuss each factor in checklist form. *See, e.g., United States v. Pollock*, 757 F.3d 582, 590–91 (7th Cir. 2014); *United States v. Washington*, 739 F.3d 1080, 1081 (7th Cir. 2014); *United States v. Hodge*, 729 F.3d 717, 721 (7th Cir. 2013). And though the discussion was brief, it was adequate to

justify the upward variance. *See Gall v. United States,* 552 U.S. 38, 46–47 (2007); *United States v. Snyder,* 635 F.3d 956, 960–61 (7th Cir. 2011). The court explained that Rodriguez-Sánchez's absconding was particularly egregious, given its intention that the earlier lenient sentence of time served would expedite his removal. *See* 18 U.S.C. § 3553(a)(1). The court also noted that the sentence was necessary to protect the public in light of the defendant's history involving violence, weapons, and drugs, *see id.* § 3553(a)(1), (a)(2)(C), and to deter others from committing similar violations of supervised release, *see id.* § 3553(a)(2)(B). And the court considered the kind of sentences available when it explained why it rejected Rodriguez-Sánchez's request for a guidelines sentence and the government's request for the statutory maximum. *See id.* at § 3553(a)(3), (a)(4).

Moreover, the commentary to policy statement U.S.S.G. § 7B1.4 , which sets forth the prison range applicable upon revocation in the guidelines, suggests that an above-guidelines sentence may be warranted when the original sentence resulted from a downward variance. U.S.S.G. § 7B1.4 app. n.4; *see United States v. Clay,* 752 F.3d 1106, 1109 (7th Cir. 2014); *United States v. Thornhill,* 759 F.3d 299, 313 n.14 (3d Cir. 2014); *United States v. Hergott,* 562 F.3d 968, 970 (8th Cir. 2009); *United States v. Verkhoglyad,* 516 F.3d 122, 129–30 (2d Cir. 2008); *see also* 18 U.S.C. § 3583(d)(3) (directing district court to impose term of reimprisonment consistent with policy statements). Although the district court did not refer to this policy statement when explaining Rodriguez-Sánchez's sentence, its many references to the defendant's initial lenient sentence echo § 7B1.4's rationale.

AFFIRMED.