# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3807

_____

United States of America

*Plaintiff - Appellee*

v.

Carlos Kalier Rodriguez, also known as Carlos Jose Rodriguez-Ortiz

*Defendant - Appellant*

_____

No. 17-3809

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Lee Marcov

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Dubuque

_____

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

BEAM, Circuit Judge.

## I.      BACKGROUND

Carlos Rodriguez and Michael Marcov appeal the sentences and restitutional requirements imposed by the district court[1] following their guilty pleas to wire fraud. Rodriguez and Marcov, and many others, participated in a scheme to obtain money from generally elderly victims in the Dubuque, Iowa, area and elsewhere by calling and telling them that relatives in the Dominican Republic had been jailed and that the relatives needed to wire money to get them out. Victims wired money to a person at a location provided by the callers. The criminal organization employed "crew leaders" and "runners" in the United States. The crew leaders communicated with people in the Dominican Republic, while runners picked up money, returned it to crew leaders, who then deposited it in United States bank accounts for subsequent transfer to the Dominican Republic, or directly transferred money to the Dominican Republic.

Starting in 2015, Rodriguez was both a runner and a crew leader and he was in direct contact with members of the organization in the Dominican Republic to give them names of possible runners. Rodriguez also recruited runners and crew leaders

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

in the United States and directly supervised at least twenty-three runners at various times during the conspiracy. In December 2015, one of those recruits, co-defendant Marcov, joined the scheme. Marcov quickly immersed himself in the program, advancing from runner to crew leader within a few months. As a crew leader, Marcov had direct contact with Dominican Republic organization members and recruited and ultimately supervised at least nine runners. In May 2017, Rodriguez and Marcov each pleaded guilty to one count of wire fraud.

At Rodriguez's sentencing, the district court found that Rodriguez was jointly and severally liable with certain other members of the conspiracy for payment of restitution in the amount of $774,584.97. Rodriguez agreed at sentencing that this number was the correct amount of loss involved in the total scheme (but challenged that he should be personally liable for that amount of restitution). The court departed upward four levels under United States Sentencing Guidelines Manual § 5K2.0(a)(3), finding that the Guidelines did not adequately take into consideration the number of victims. Alternatively, the district court stated that if a four-level U.S.S.G. § 5K2 upward departure was not legally appropriate, it would have exercised its discretion to vary upwards under the factors set forth in 18 U.S.C. § 3553(a). As noted in the government's brief, the district court made an additional downward adjustment "for reasons unrelated to this appeal" and Rodriguez's resulting sentence was 79 months in prison.

At Marcov's sentencing, a Dubuque, Iowa, police officer who had investigated the criminal venture testified regarding Marcov's role in the overall scheme. He testified that Marcov was recruited by Rodriguez to be a runner; that Marcov began recruiting other individuals to work with him picking up wire transfers for Rodriguez; and stated that eventually Marcov became a crew leader. With regard to the amount of loss attributable to Marcov, the officer testified that he interviewed several runners working for both Marcov and Rodriguez, and testified about the financial documents he examined that were attributable to either Marcov or the runners working for

Marcov during the time frame when Marcov was involved in the crimes. Based upon this testimony and extensive documentation, the district court found that the loss attributable to Marcov was roughly $298,000, which equaled the total amount of loss from the wire fraud portion of the conspiracy. The district court also correctly found that Marcov was a manager or supervisor in the scheme. As with Rodriguez's sentencing, the district court departed upward in Marcov's case based upon the number of victims not adequately taken into account by the Guidelines. The court set restitution for Marcov at $298,314.42, to be shared jointly and severally with Rodriguez. The district court's final sentence was 120 months, the bottom of the 120-150 month Guidelines range.

## II.    DISCUSSION

On appeal, Rodriguez first challenges the district court's upward departure based upon the number of victims. But, as previously noted, the district court stated alternatively that it would vary upwards to the sentence it arrived at under its discretion authorized by 18 U.S.C. § 3553(a). Thus, it is unnecessary to review the Guidelines challenge if the upward variance "is sufficient to justify the sentence imposed." United States v. Hentges, 817 F.3d 1067, 1068 (8th Cir. 2016). We give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." United States v. Espinoza, 831 F.3d 1096, 1098 (8th Cir. 2016) (quoting United States v. Moralez, 808 F.3d 362, 368 (8th Cir. 2015)). We find the district court did not abuse its discretion in sentencing Rodriguez to 79 months in prison.

Rodriguez and Marcov both challenge the amount of restitution ordered. The Mandatory Victims Restitution Act (MVRA) states that a district court must order restitution in a case, such as this, prosecuted under Title 18 of the United States Code if the offense involved fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). The government must prove the amount of restitution by a preponderance of the evidence

and we review the resulting restitution order for an abuse of discretion. United States v. Hoskins, 876 F.3d 942, 945 (8th Cir. 2017), cert. denied, 138 S. Ct. 2589 (2018). When multiple defendants are involved in the loss, the district court has discretion to order restitution for the full amount of loss, to be shared jointly and severally by defendants. 18 U.S.C. § 3664(h). Restitution includes amounts that were reasonably foreseeable as losses to the victims. United States v. Alexander, 679 F.3d 721, 731 (8th Cir. 2012).

Rodriguez argues that because there were periods of time when he was not active in the criminal enterprise, he should not be jointly liable for the full $774,584.97 amount of restitution. Specifically, Rodriguez argues he was inactive from February to April 2016, that the amount lost during that time was not reasonably foreseeable to him, and the restitution order should be reduced accordingly. The district court found that Rodriguez should be held responsible for the entire amount of the loss, even the amount that accrued during his alleged "inactive" time, because during that time, Marcov and his crew were active and Marcov was recruited by Rodriguez. Accordingly, the district court did not err in finding that this loss, caused by a crew leader (Marcov) who had been recruited by Rodriguez, was reasonably foreseeable to Rodriguez because he knew the crew was active during the time frame he challenges. Id. Thus, the government met its burden of proving that the correct amount of restitution was awarded, and the district court did not abuse its discretion in electing to make the entire amount jointly and severally attributable to Rodriguez.

Marcov's challenge to the restitution awarded is equally unavailing. As we understand Marcov's argument, he argues that he did not cause the entire loss attributed to him, and because he did not personally gain much from the scheme, the amount should be much less. Since he gained so little, Marcov argues, it was not reasonably foreseeable to him that the loss to victims would be nearly $300,000. Like Rodriguez, Marcov does not challenge that $298,314.42 was lost, he simply argues this total amount is not "attributable" to him, and instead the amount of restitution

should be less than $6,500. At sentencing, the officer's testimony indicated that Marcov was intimately involved in each transaction that occurred during the time frame he was involved in the conspiracy–Marcov knew the dollar amounts involved with each transaction and where the wire transfers should be picked up.

Marcov's citation to Honeycutt v. United States 137 S. Ct. 1626 (2017) does not advance his cause. In Honeycutt the Court held that the forfeiture statute, 21 U.S.C. § 853, limited forfeiture to property the defendant himself actually acquired as a result of the crime, and further held that joint and several liability was not appropriate in the forfeiture context. 137 S. Ct. at 1632-33. While we can appreciate Marcov's attempts to extend the reasoning behind Honeycutt's joint and severability ruling to the restitution statute, the rationales behind the forfeiture statute and the restitution statute are quite distinct. The forfeiture statute is meant to prevent a defendant from keeping his "ill-gotten gains," to return property to those deprived of it, and to serve as a deterrent to the economic power of criminal activity. Id. at 1631 (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 629-30 (1989)). While some aspects of mandatory restitution statutes are punitive, the primary purpose of such statutes is "remedial or compensatory." Paroline v. United States, 572 U.S. 434, 456 (2014). Most importantly, unlike the forfeiture statute, the express language of the MVRA allows joint and severable liability. Nothing in Honeycutt undercuts the language of 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution . . . ."). In fact, a primary reason behind the Honeycutt Court's decision was the lack of statutory text authorizing forfeiture to be allotted jointly and severally. 137 S. Ct. at 1632. Accordingly, the government met its burden to prove the amount of restitution by a preponderance of the evidence and the district court did not abuse its discretion in ordering Marcov liable for the full amount of the loss during the time he was active in the criminal enterprise.

Marcov further challenges the district court's factual assessment that he had a supervisory role resulting in the upward departure, and argues instead that the court should have granted him a minor-role *downward* departure. We review the district court's factual findings regarding a minor role reduction for clear error. United States v. Price, 542 F.3d 617, 622 (8th Cir. 2008). We find no clear error in the district court's factual findings. The police officer testifying at the hearing indicated that Marcov was not only a recruited participant in the scheme, but rather quickly rose through the ranks and began recruiting others himself and became a crew leader. Marcov admitted that he recruited at least nine people to become runners and then supervised them as a crew leader. The fact that the scheme involved a large number of other participants does not make Marcov's supervision over a relatively small percentage of them any less supervisory. Perhaps he was a "minor supervisor." However, neither our cases nor the Guidelines make such a distinction. See id. (upholding district court's refusal to grant a minor role adjustment where defendant supervised and directed at least one other person to commit fraud). The district court's finding that Marcov was a supervisor, not a minor participant, was not clearly erroneous.

Finally, Marcov challenges his sentence as substantively unreasonable, which claim we review for an abuse of discretion. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). The district court abuses its discretion if it fails to consider a relevant factor that should have instead received significant weight, gives significant weight to an improper factor, or considers appropriate factors but commits a clear error of judgment in weighing those factors. United States v. Long, 906 F.3d 720, 727 (8th Cir. 2018). We have reviewed the record, including the sentencing transcript and presentence investigation report, and find no abuse of discretion. Here, the district court considered all of the relevant factors, did not give weight to any improper factor, and did not commit a clear error in judgment.

## III. CONCLUSION

We affirm both sentences and restitution orders.

_____