NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1828
_____

UNITED STATES OF AMERICA

v.

SHAWN HILLIARD, ALSO KNOWN AS BUGGZ,
ALSO KNOWN AS RICK, ALSO KNOWN AS BELOVED,
ALSO KNOWN AS BOOGZ,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-14-cr-00134-001)
District Judge: Honorable C. Darnell Jones, II
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 15, 2020

Before: CHAGARES, SCIRICA, and ROTH, *Circuit Judges*

(Filed:  August 18, 2020)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Shawn Hilliard was involved in a scheme that defrauded several FDIC-insured banks. For his conduct in this scheme, Hilliard pleaded guilty to one count of bank fraud under 18 U.S.C. § 1344, one count of conspiracy under 18 U.S.C. § 371, and six counts of aggravated identity theft under 18 U.S.C. §§ 2, 1028A. Hilliard appeals his sentence for the second time. Hilliard presents three issues for our review: (1) whether the trial court erred in ordering restitution of $777,583.80; (2) whether his sentence was procedurally unreasonable because the trial court failed to meaningfully consider certain evidence and factors; and (3) whether his sentence was substantively unreasonable in comparison to his co-conspirators and to his previous sentence. We conclude the trial court did not err and we will affirm Hilliard's sentence.

**I.**

Hilliard, along with multiple co-conspirators, conducted a nationwide bank fraud scheme that involved corrupting bank employees to appropriate confidential account information and directing impostors to use that information to withdraw funds from compromised accounts. The scheme caused losses at four banks: TD Bank, Citibank, Wells Fargo Bank, and Capital One Bank. Hilliard was charged in March 2015 (along with multiple co-conspirators) with one count of bank fraud, one count of conspiracy, and six counts of aggravated identity theft. While under pretrial supervision, Hilliard repeatedly failed to report and absconded to Maine under a false identity, only being apprehended months later.

As noted, Hilliard pleaded guilty to all charges and was sentenced to 126 months'

2

imprisonment, a five-year term of supervised release, restitution of $1,375,125.12 and a special assessment of $800. Hilliard timely appealed his sentence.

This Court vacated Hilliard's sentence and remanded the case to the trial court for resentencing. *United States v. Hilliard*, 726 F. App'x 918 (3d Cir. 2018). We concluded the trial court erred in finding that Hilliard had "joined the conspiracy before his parole expired in October 2012." *Id.* at 920. Additionally, we stated we had "concerns" about the trial court's basis for its finding on the restitution amount and noted the trial court "will necessarily recalculate the loss amount per our holding on the restitution amount." *Id.* at 921. Finally, we stated the sentence was not substantively unreasonable solely on the basis that co-conspirators received more lenient sentences, noting the "downward variances [were] based on [the co-conspirators'] post-offense rehabilitation efforts." *Id.*

On remand, the trial court requested new briefing to address the issues noted in our opinion and conducted a loss amount hearing to determine loss for sentencing and restitution purposes. One witness, Special Agent Michael Johnson of the Department of Homeland Security, Homeland Security Investigations, testified as to the losses stemming from the identity theft and bank fraud conspiracy attributable to Hilliard. The trial court ordered the parties to submit supplemental briefing on multiple issues, including the proper restitution amount. Both parties submitted detailed charts listing the losses they contended were legally attributable to Hilliard.

After receiving the supplemental briefing, the trial court held a sentencing hearing and heard argument on the issues raised in the supplemental briefing, sentencing in general, and the introduction of post-offense rehabilitation evidence. The trial court

3

deferred imposing a sentence so it could consider the parties' arguments and any evidence of post-offense rehabilitation.

On March 27, 2019, the trial court resentenced Hilliard to 126 months' imprisonment—the same term of imprisonment imposed at his first sentencing—as well as a five-year term of supervised release. It also ordered Hilliard to pay restitution of $777,583.80 and a special assessment of $800. J.A. 3–4, 6–7. Hilliard objected to two aspects of the sentence: (1) the weight assigned to mitigating factors Hilliard introduced "in favor of a [sentencing] variance" and (2) the trial court labeling Hilliard "a leader or organizer" for sentencing purposes. J.A. 782. Hilliard timely appealed.[1]

## II.

As noted, Hilliard presents three overall issues for our review: (1) whether the trial court erred in imposing a restitution amount of $777,583.80; (2) whether his sentence was procedurally unreasonable because the trial court failed to meaningfully consider certain evidence and factors; and (3) whether his sentence was substantively unreasonable.

## A.

Hilliard contends the trial court erred in imposing a restitution amount of $777,583.80. It appears Hilliard asserts two arguments here: (1) failure to use the right test in reaching the restitution amount and (2) employing the correct test, actual loss, but imposing a restitution amount that was too high. Because we conclude the restitution

---

[1] The trial court possessed jurisdiction under 18 U.S.C. § 3231. We possess jurisdiction to review Hilliard's sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

4

amount imposed reflects only actual loss, we need not address Hilliard's first argument and we conclude the trial court did not err.[2]

We "review a restitution order under a bifurcated standard: plenary review as to whether restitution is permitted by law, and abuse of discretion as to the appropriateness of the particular award." *United States v. Fallon*, 470 F.3d 542, 548 (3d Cir. 2006) (quoting *United States v. Quillen*, 335 F.3d 219, 221 (3d Cir. 2003)). The trial court's fact-finding is reviewed for clear error; in other words, whether it is "completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *United States v. Vitillo*, 490 F.3d 314, 330 (3d Cir. 2007) (quoting *United States v. Haut*, 107 F.3d 213, 218 (3d Cir. 1997)).[3] The parties agree that the Mandatory Victims Restitution Act requires the imposition of restitution in this case. 18 U.S.C. § 3663A(c)(1); 18 U.S.C. § 3664(f)(1)(A) (stating restitution must be ordered "in the full amount of each victim's losses"). What remains is a challenge to the amount of the award.

---

[2] We note that it appears Hilliard complains about the $777,583.80 figure when it was used both as the loss amount for sentencing purposes and to impose restitution. The amount of loss for sentencing and restitution may differ, because sentencing loss may be "intended loss" while restitution is limited to "actual loss." *See United States v. Feldman*, 338 F.3d 212, 215–16 (3d Cir. 2003) (discussing that actual or intended loss may serve as the basis for a sentencing enhancement, but "a restitution award can only be based upon actual loss"). Because this case hinges on actual, rather than intended, loss, we need only review the restitution amount. *See id.* at 219 ("We will first discuss the restitution issue, which turns on the determination of actual loss. This will obviate the need to discuss actual loss in conjunction with the sentencing issue.").

[3] When reviewing loss amount, factual findings are also reviewed for clear error. *United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001) (citing *United States v. Sharma*, 190 F.3d 220, 226 (3d Cir. 1999)). We exercise plenary review over a trial court's interpretation of the United States Sentencing Guidelines. *Id.* (citing *Sharma*, 190 F.3d at 229). Our conclusion would remain the same, even if under these standards of review.

Restitution is limited to the victims' actual losses. *Feldman*, 338 F.3d at 216. Although relying on different bases, the parties agree that actual loss standard includes losses which were reasonably foreseeable to Hilliard, even if the losses were caused by the conduct of his co-conspirators. This appears to be the proper test for actual loss in cases of conspiracy and we will apply it here. *Cf. United States v. Robinson*, 167 F.3d 824, 830–32 (3d Cir. 1999) (using "reasonably foreseeable" test to hold conspirator liable for drug death for sentencing purposes even though conspirator did not sell drugs to decedent).[4] Accordingly, we must determine whether the restitution amount reflects losses that Hilliard directly caused, knew about, or were reasonably foreseeable to occur.

As noted, the trial court imposed $777,583.80 in restitution. J.A. 6–7, 774–75. At his second sentencing, Hilliard contended only $639,440 in loss was attributable to him. J.A. 728, 736. According to Hilliard, his proposed restitution amount reflected all losses that he was directly involved in or had direct knowledge of. The government asserted $1,161,568.80 of the approximately $1.3 million total loss was attributable to Hilliard. J.A. 700, 732. In reaching a restitution amount, the trial court explained that Hilliard was directly responsible for or had direct knowledge of the following percentages of losses

---

[4] It is also the standard in our Sister Circuits. *See United States v. Newell*, 658 F.3d 1, 32 (1st Cir. 2011) ("[I]t is well established that defendants can be required to pay restitution for the reasonably foreseeable offenses of their co-conspirators."); *United States v. Boyd*, 222 F.3d 47, 51 (2d Cir. 2000) (same); *United States v. Newsome*, 322 F.3d 328, 338 (4th Cir. 2003) (same); *United States v. Bogart*, 576 F.3d 565, 576 (6th Cir. 2009) (same); *United States v. Ismoila*, 100 F.3d 380, 398–99 (5th Cir. 1996) (similar); *United States v. Rand*, 403 F.3d 489, 495 (7th Cir. 2005) (same); *United States v. Rodriguez*, 915 F.3d 532, 535 (8th Cir. 2019) (same); *United States v. Riley*, 335 F.3d 919, 931–32 (9th Cir. 2003) (same); *United States v. Osborne*, 332 F.3d 1307, 1314 (10th Cir. 2003) (same); *United States v. Odom*, 252 F.3d 1289, 1298–99 (11th Cir. 2001) (same).

caused by the conspiracy: 33% from TD Bank, 75% from Citibank, 90% from Wells Fargo, and approximately 1% from Capital One. J.A. 775. Based on the charts received from the parties and the testimony of Special Agent Johnson, the trial court imposed restitution for Hilliard's "self-admitted" losses at institutions—TD Bank and Capital One—where Hilliard was responsible for less than 50% of the loss. J.A. 774–75. Where Hilliard was responsible for more than 50% of the loss—namely, the losses incurred by Citibank and Wells Fargo—the trial court imposed restitution in the amount the government requested. Because Hilliard admitted the full restitution amount for TD Bank and Capital One and most of the restitution amount for Citibank and Wells Fargo, we need only examine the excess loss amounts, that is, the amounts exceeding those admitted by Hilliard, at Citibank and Wells Fargo.

Comparing the portions of the parties' charts on Citibank, the excess loss amounts attributed to Hilliard by the government stem from account information provided by Yolanda Gorham, a Citibank employee. Special Agent Johnson's testimony shows that Hilliard knew Gorham was providing confidential account information to his co-conspirators and had provided him with account information through an intermediary, Wayne Collins. Losses involving account information received from Gorham, even if Hilliard was not directly involved and did not have direct knowledge, were reasonably foreseeable to him. The trial court did not abuse its discretion in attributing these losses to Hilliard.

Comparing the portions of the parties' charts on Wells Fargo, the excess loss amounts attributed to Hilliard by the government stem from one impostor, Christina

Bevilacqua. Special Agent Johnson's testimony reveals that Dramian Combs, whom Hilliard recruited as a driver and an impostor, stated Hilliard managed Bevilacqua. Because Hilliard had managed and worked with her in the past, it was reasonably foreseeable to him that she would continue her role in the conspiracy in the future. The trial court did not abuse its discretion in attributing these losses to Hilliard.

The trial court's restitution award only included those losses Hilliard was directly responsible for, had direct knowledge of, or which were reasonably foreseeable to him. In other words, it only reflected actual loss. Accordingly, we will affirm the trial court's restitution order, as there was no legal or factual error and it did not abuse its discretion in imposing restitution in the amount of $777,583.80.

**B.**

Hilliard asserts his sentence was not procedurally reasonable. When reviewing for procedural reasonableness, we:

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*United States v. Douglas*, 885 F.3d 145, 150 (3d Cir. 2018) (quoting *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc)) (alteration omitted).

Hilliard presents three procedural reasonableness issues for our review. First, he contends the trial court refused to consider evidence of post-offense rehabilitation as required under *Pepper v. United States*, 562 U.S. 476 (2011). Second, he contends the

8

trial court erred in failing to meaningfully consider "the lower criminal history score, the lower restitution amount, and his post-sentencing rehabilitative efforts." Appellant's Br. 45–46. Third, he contends the trial court erred in its weighing of his abscondment during pretrial supervision.

Because Hilliard did not lodge an objection in the trial court on the first two issues, we review those for plain error. *See United States v. Flores-Mejia*, 759 F.3d 253, 258 (3d Cir. 2014) ("[I]n a criminal prosecution, unless a relevant objection has been made earlier, a party must object to a procedural error after the sentence is pronounced in order to preserve the error and avoid plain error review."). Because he did object to the weight given to his abscondment, we review for abuse of discretion. *United States v. Negroni*, 638 F.3d 434, 443 (3d Cir. 2011) (citing *United States v. Wise*, 515 F.3d 207, 217–18 (3d Cir. 2008)).

First, Hilliard suggests the trial court did not consider his post-offense rehabilitative conduct because it rejected its obligation to do so under *Pepper v. United States*, 562 U.S. 476 (2011), and only later "begrudgingly gave Hilliard the opportunity to present the evidence." Appellant's Br. 47. Hilliard mischaracterizes the exchange between the trial court and counsel, as it appears the trial court believed Hilliard's counsel was asserting that *Pepper* supported his contention that he should be able to introduce new evidence on the issue of role enhancement, not post-offense rehabilitation. Moreover, it appears the trial court agreed with Hilliard's counsel multiple times that evidence of post-offense rehabilitation may be introduced at resentencing and explicitly stated it would give counsel "the opportunity to present the evidence." J.A. 744. In fact,

9

as detailed below, the trial court explained that it considered "Hilliard's evidence of post-sentencing conduct" in determining its sentence. J.A. 780. The trial court did not err, let alone commit plain error, in accepting and considering Hilliard's evidence of post-offense rehabilitation.

Second, Hilliard asserts the trial court did not give meaningful consideration to his lower criminal history score, his lower restitution amount, and the evidence of post-offense rehabilitation. In discussing the § 3553(a) factors, a trial court must give "meaningful consideration" to the "particular circumstances of the case." *United States v. Thornhill*, 759 F.3d 299, 311 (3d Cir. 2014) (quoting *Tomko*, 562 F.3d at 567). We have held "[a] sentencing court does not have to 'discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing.'" *Tomko*, 562 F.3d at 568 (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006)); *see also Thornhill*, 759 F.3d at 311 ("This does not mean that the sentencing court is required to 'discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing.'" (quoting *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007))).

In imposing Hilliard's second sentence, the trial court stated: "I have taken into account the reduced restitution amount of $777,583.80, the reduced criminal history category of 2" and "Hilliard's evidence of post-sentencing conduct," including:

> eight disciplinary charges in a 27-month period, completion of 46 credit hours of educational and vocational course work, completion of a drug education program, the Bureau of Prisons' recommendation that he be assigned to a lower level security prison, and Mr. Hilliard's preparation for

10

a productive life as a personal trainer after he satisfies his term of imprisonment.

J.A. 779–80. The record reflects meaningful consideration and we conclude that the trial court did not err, let alone commit plain error, in its consideration of the evidence and these factors.[5]

Third, Hilliard contends the trial court gave his abscondment too much weight. But a trial court's decision to give a factor different weight than that urged by the defendant does not make a sentence unreasonable. *See United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011) ("The District Court's decision to accord less weight to mitigation factors than that urged by [the defendant] does not render the sentence unreasonable." (citing *Bungar*, 478 F.3d at 546)). The trial court did not abuse its discretion in affording greater weight in sentencing to Hilliard's abscondment than Hilliard wished and the weight given was reasonable. We conclude Hilliard's sentence was procedurally reasonable.

## C.

We next consider the substantive reasonableness of Hilliard's sentence. Hilliard contends the sentence imposed is not substantively reasonable for two reasons: (1) the sentence is identical to his previous sentence even though certain factors were more favorable to him and (2) the sentence is disproportionate to those imposed on co-

---

[5] In support of his argument that the trial court did not meaningfully consider certain factors and evidence, Hilliard asserts the trial court did not explain the amount of time he was sentenced to serve for each count and could not have imposed his sentence in the same manner as at his first sentencing. But this contention is incorrect. It appears to have no relation to procedural reasonableness, as Hilliard does not contend this sentence could not lawfully have been imposed nor that the trial court's calculations were incorrect.

conspirators. We conclude neither argument is meritorious.

We review substantive unreasonableness for abuse of discretion. *Tomko*, 562 F.3d at 567. Where, as here, the sentence imposed was within the Guidelines range, "the appellate court may, but is not required to, apply a presumption of reasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007) (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)). We will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

We presume reasonableness here because Hilliard's sentence is within the applicable Guidelines range. Although certain factors improved for Hilliard between his first and second sentencing, the relevant test is not—as Hilliard appears to contend—whether the sentence is reasonable in light of a previous, vacated sentence, but whether "no reasonable sentencing court would have imposed the same sentence." *Id.* at 568. This is not a case where no reasonable sentencing court would have imposed the same sentence. There was no abuse of discretion.

Nor is it substantively unreasonable just because Hilliard's sentence is longer than his co-conspirators.[6] A sentencing court need only consider "the need to avoid

---

[6] The Government contends we need not address this issue on the merits because it was decided by the previous panel. We disagree. Even though the previous panel considered whether Hilliard's sentence was substantively unreasonable compared to his co-conspirators, *Hilliard*, 726 F. App'x at 921, it did not consider that contention under the current sentence and evidence of post-offense rehabilitation. The law-of-the-case doctrine only applies when "prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *UA Theatre Cir. v. Twp. of Warrington*, 316 F.3d 392, 397–98 (3d Cir. 2003) (quoting *Aramony v. U. Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001)). There was neither an express nor implied holding on Hilliard's contention under this set of facts.

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This portion of the statute only applies when "co-defendants are similarly situated." *United States v. Parker*, 462 F.3d 273, 278 (3d Cir. 2006). And "[d]isparity of sentence between co-defendants does not of itself show an abuse of discretion." *United States v. Cifuentes*, 863 F.2d 1149, 1156 n.5 (3d Cir. 1988) (citing *United States v. Endicott*, 803 F.2d 506, 510 (9th Cir. 1986); *United States v. Peters*, 791 F.2d 1270, 1303 (7th Cir. 1986); *United States v. Herrera*, 757 F.2d 144, 150 (7th Cir. 1985); *United States v. Garrett*, 680 F.2d 650, 652 (9th Cir. 1982)).

Hilliard admits he is not similarly situated to his co-conspirators. *See* Appellant's Br. 58 ("Hilliard did not have the same type of mitigating evidence that the Clemente brothers did . . . ."). Because Hilliard and his co-conspirators are dissimilar in both the type and amount of mitigation evidence presented, Hilliard can point to no more than a disparity of sentence. This is not sufficient. We see no abuse of discretion. Hilliard's sentence is not substantively unreasonable.

## III.

For the reasons stated, we will affirm the sentence imposed by the trial court.

13